UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 3 0 2000

*Robert M. March*
CLERK

JAMES BRAY,

Plaintiffs,

v.   CIV NO. 00-379 DJS/RLP

THE BOARD OF REGENTS OF THE UNIVERSITY OF
NEW MEXICO, JULIE WEAKS, in her official capacity,
JOHN DOES 1-10, JANE DOES 1-10,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before this Court on Defendant Board of Regents of the University of New Mexico (Defendant's) Motion for Preliminary Injunction on Defendants' Counterclaims filed November 6, 2000 (Docket No. 39). The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment. Defendant seeks an injunction preventing Plaintiff from using "LOBOS" or any confusingly similar variation of the trademark as part of any domain name from any computer connected to the Internet. In addition, Defendant intends the injunction to prohibit the use of the University of New Mexico's trademark "Wolf Head Design" by Plaintiff in conjunction with the sale or offering for sale of any goods or services. Plaintiff failed to respond to the motion.

### FACTUAL BACKGROUND

The instant action is a civil action brought pursuant to 42 U.S.C. §1983 seeking injunctive and declaratory relief. Plaintiff is a University of New Mexico alumnus and a fan of the University's

athletic teams. He operates two unofficial Internet web sites which report information and contain articles regarding University of New Mexico athletics. Those sites are named "lobobasketball.com" and "lobofootball.com". Plaintiff asserts that before he started the web sites, he contacted Rudy Davalos, the athletic director for the University of New Mexico, as well as other University officials. Plaintiff contends that Davalos and the other officials agreed that he could use insignia associated with the University's athletic teams on his sites and that he could use the names "lobobasketball.com" and "lobofootball.com". Plaintiff further asserts that the University officials also agreed that his web sites would be given the same access to news and press releases regarding UNM athletics as were provided to other news media covering the teams.

Plaintiff set up the web sites "lobobasketball.com" and "lobofootball.com" in February, 1999. He registered them in the name of American Information Services, a corporation which provides technical support, computers, and software for Internet web hosting services to individuals and organizations and which is owned by Plaintiff. Plaintiff asserts that his relationship with the University of New Mexico was cordial and cooperative until he began to report unfavorable news about UNM athletics. Plaintiff contends that, in retaliation for his news coverage and opinion commentary, Defendants singled him out for unfavorable treatment. That treatment includes dropping him from the distribution of press releases and other publicity materials from the UNM Athletic Department. In addition, Plaintiff claims that Defendants maligned him and made false statements about him and his company by accusing him of being a pornographer, by claiming that the web sits are linked to pornographic sites, and by claiming that he does not have the right to use the names "lobobasketball.com" and "lobofootball.com". Plaintiff asserts that Defendants' actions are an attempt to punish him for the exercise of his First Amendment right to free speech and to chill

2

further such speech. He further argues that Defendants' treatment of him is discriminatory and violates the Equal Protection Clause of the Fourteenth Amendment.

Part of the relief sought by Plaintiff was a declaration by the Court that he has the right to continue using the terms "lobobasketball.com" and "lobofootball.com" as well as insignia concerning UNM athletics. Defendants asserted Eleventh Amendment immunity and their motion to dismiss that portion of Plaintiff's complaint was successful. The Court held that the prospective relief sought by Plaintiff was a separate matter of trademark law and was not ancillary to the prospective injunctive relief which survived Defendants' motion to dismiss. Subsequently, Defendants asserted counterclaims based upon trademark dilution, trademark infringement and the Anticybersquatting Consumer Protection Act. By a separate motion, Defendants currently seek default judgment on those claims.

**STANDARD OF LAW**

Defendant's motion and brief seeking the preliminary injunction total thirty pages, which is three pages beyond the limit set by D.N.M.LR-Civ. 7.7. Further, Defendant attached one hundred and seventeen pages of exhibits to its memorandum in support of the motion, far in excess of the fifty page limit prescribed by D.N.M.LR-Civ. 7.7. More seriously, counsel for Defendant merely certified that the motion was served upon Plaintiff, but did not indicate that he had determined whether the motion was opposed as required by D.N.M.LR-Civ. 7.4(a). For each of these reasons, Defendant's motion will be denied.

In addition, Defendant's motion should be denied on the merits. As a preliminary injunction is an extraordinary remedy, see GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir.1984), the right to relief must be clear and unequivocal. See Penn v. San Juan Hosp., 528 F.2d 1181, 1185 (10th

Cir.1975); Matzke v. Block, 542 F.Supp. 1107, 1112-13 (D.Kan.1982); See generally 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 428-29 & nn. 19-21 (1973 & Supp.1991) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (footnotes omitted)). Further, the function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. (1980)(citations omitted). The status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights. SCFC ILC Inc. v. Visa USA, Inc., 936 F.2d 1096, 1099 (10th Cir. 1991). To the same effect, see Stemple v. Board of Education of Prince George's County, 623 F.2d 893 (4th Cir.1980), cert. denied, 450 U.S. 911 (1981). There, status quo was defined as "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." Id. at 898. See generally Federal Practice & Procedure § 2948, at 465.

Further, certain types of preliminary injunctions are so disfavored that the movant must satisfy an even heavier burden than its normal burden of persuasion before they may be issued. SCFC ILC, 936 F.2d at 1098-99. These include preliminary injunctions that (1) disturb the status quo; (2) that are mandatory rather than prohibitory; or (3) that afford the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits." Id. A court passing judgment on a motion for preliminary injunction considers whether the movant establishes that: (1) it will suffer irreparable injury unless an injunction is issued; (2) its threatened injury outweighs any harm the proposed injunction may cause to the opposing party; (3) it will likely prevail on the merits of

4

the litigation; and (4) an injunction, if issued, would not be adverse to the public interest. Chemical Weapons Working Group, Inc. v. United States Dept. of the Army, 111 F.3d 1485, 1489 (10th Cir.1997) (citation omitted). Because Defendant seeks to alter the status quo and deprive Plaintiff of the names of the web sites he has established, it must show that the four factors listed above weigh heavily and compellingly in its favor. See Primedia Intertec Corp. v. Technology Marketing Corp., 35 F.Supp.2d 809, 814 (D.Kan. 1998) (Injunction seeking to prevent the defendant from continuing to publish magazine would disturb the status quo).

**Irreparable Injury**

"As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury." New Jersey Ass'n of Health Care Facilities v. Gibbs, 838 F.Supp. 881, 928 (D.N.J. 1993); see also Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir.1984). Defendant did not seek this injunction until well after it had been sued by Plaintiff. Counterbalancing this point is the fact that irreparable harm is usually presumed in trademark cases. See Amoco Oil Co. v. Rainbow Snow, Inc., 809 F.2d 656, 663 (10th Cir.1987).

Defendant presents an affidavit of Defendant Julie Weaks stating Weaks belief that Plaintiff's web sites are harming the reputation of the University of New Mexico. In addition, it presents a number of electronic mail communications from a three day period in which various individuals request that the University "do something" about Plaintiff's web sites and in which the individuals express disgust with the web sites' contents or opine that the University should initiate litigation to stop the sites. However, none of the electronic mail missives display confusion that the web sites might be sponsored by the University or represent the views of the University or its staff. Further, the web sites clearly state that they are "unofficial". The Court concludes that Defendant has not

5

compellingly established that the irreparable harm factor weighs in its favor.

### Injury vs. Harm of Injunction

In support of this factor, Defendant offers a tautology. Defendant asserts that either visitors to Plaintiff's web sites are being diverted from the web site "golobos.com", which has the sanction of the University, or they are specifically looking for Plaintiff Bray and will find his writing at any web site which has a name which specifies that he is the source of the content. This proposition ignores the possibility that visitors to the site are looking for any commentary or criticism of the University of New Mexico basketball or football teams. Defendant ignores the possibility that visitors to Plaintiff's web sites are seeking negative or critical commentary. Further, Defendant's proposition also relies upon the unproven predicate that visitors who enjoy Plaintiff's web site realize that he, James Bray, is the source of the content. In addition, Defendant's theory relies upon the unproven assumption that visitors to Plaintiff's web sites will cease to view any web sites with "lobos" in the name and thus fail to encounter the site "golobos.com". Defendant has not met its burden of logic or law and shown that the injury it suffers outweighs the harm the requested injunction would cause.

### Prevail Upon the Merits

The Court finds that this factor weighs in favor of Defendant based upon Plaintiff's *pro se* status and his failure to respond to the instant motion. Apart from that consideration, the legal issues presented by Defendants' counterclaim significantly complicate this case and will require further development before the Court can find that this factor weighs in Defendant's favor.

### Adverse to Public Interest

The Court finds that this factor is neutral. While trademark protection and defense of

6

reputation is in the public interest, the chilling of discussion or criticism of a public institution such as the University of New Mexico is not. The Court does not find that Defendant has met its heightened burden with regard to this factor.

On balance, Defendant has not met its heightened burden and shown that it is entitled to a preliminary injunction which alters the status quo. In addition, the motion fails on the procedural grounds mentioned above.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Preliminary Injunction on Defendants' Counterclaims is denied.

_____
DON J. SVET
UNITED STATES MAGISTRATE JUDGE

7